UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80139-Civ-MIDDLEBROOKS
        (04-80147-Cr-MIDDLEBROOKS)
MAGISTRATE JUDGE P. A. WHITE

JUAN RAMON QUINONES,                :

        Movant,                     :

v.                                  :        **REPORT OF MAGISTRATE**
                                             **JUDGE RECOMMENDING**
UNITED STATES OF AMERICA,           :        **THAT MOTION BE GRANTED**
                                             **FOLLOWING AN EVIDENTIARY HEARING**
        Respondent.                 :
_____

Introduction

        This matter is before the Court on the movant, Juan Ramon
Quinones' ("Quinones") Motion to Vacate, attacking his conviction
and sentence for: being a felon in possession of a firearm in
violation of 18 U.S.C. §§922(g)(1) and 924(e) (Count 2); possession
with intent to distribute cocaine in violation of 21 U.S.C.
§§841(a)(1) and 841(b)(1)(C) (Count 2); possessing a firearm during
a drug trafficking crime in violation of 18 U.S.C. §924(c) (Count
3); and possessing one or more firearms not registered with the
National Firearms Registration and Transfer Record as required by
26 U.S.C. §5841, in violation of 26 U.S.C. §§5861(d) and 5871
(Count 7) in Case No. 04-80147-Cr-MIDDLEBROOKS.

        This Cause has been referred to the Undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2255 Cases in the
United States District Courts.

The Undersigned has reviewed the Motion (Cv-DE#1), Memorandum in Support (Cv-DE#2), the government's response and exhibits (Cv-DE#19), the Movant's reply (Cv-DE#23), the PSI, exhibits entered into evidence at the evidentiary hearing and the underlying criminal file.

Construing Quinones' assertions liberally as afforded *pro se* litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), he raises the following claims:

1. The movant was denied effective assistance of counsel, where his lawyer failed to file a direct appeal upon the movant's request. (Cv-DE#1:5; Cv-DE#2).

2. The movant was denied effective assistance of counsel at sentencing. (Cv-DE#1:6; Cv-DE#2).

3. The movant's guilty plea was not entered knowingly, voluntarily and intelligently, due to ineffective assistance of counsel. (Cv-DE#1:6; Cv-DE#2).

4. The cumulative effect of counsel error amounts to the denial of effective assistance of counsel. (Cv-DE#1:7; Cv-DE#2).

After review of the record, it became apparent that an evidentiary hearing was necessary at least with regard to claim one, as listed above and with regard to the timeliness of this motion to vacate.  Michael B. Cohen, Esquire was appointed to represent Quinones, and an evidentiary hearing was held on August 18, 2009.

Factual and Procedural History

For an appreciation of this case and the claims raised herein, a brief factual and procedural history of the underlying criminal

case is required.    On November 4, 2004, the movant was indicted by a federal grand jury charging him with various narcotics and firearm offenses (DE:7).  Specifically, Counts 1 and 4 charged him with being a felon in possession of a firearm in violation of 18 U.S.C. §§922(g)(1) and 924(e); Counts 2 and 5 charged him with possession with intent to distribute cocaine in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C); Counts 3 and 6 charged him with possessing a firearm during a drug trafficking crime in violation of 18 U.S.C. §924(c); and Count 7 charged him with possessing one or more firearms not registered with the National Firearms Registration and Transfer Record as required by 26 U.S.C. §5841, in violation of 26 U.S.C. §§5861(d) and 5871 (DE:7).

On January 21, 2005, the government filed a Sentencing Enhancement Information pursuant to 21 U.S.C. §851 (DE:31). On January 24, 2005, the movant executed a written plea agreement with the United States.  (DE# 19, Exh. 1).  On January 24, 2005, the movant appeared with his Attorney Richard Springer before the Honorable Donald M. Middlebrooks, United States District Judge, and pleaded guilty to Counts 1, 2, 3, and 7 of the indictment (DE# 19, Exh. 2).  Judge Middlebrooks accepted the movant's guilty plea, in accordance with the written plea agreement, and adjudged him guilty of Counts 1, 2, 3, and 7 of the indictment.[1]

On April 13, 2005, Judge Middlebrooks sentenced the movant to a term of 262 months' imprisonment (DE# 19, Exh. 3). The movant did not file a direct appeal from his conviction and sentence, although

---

[1] Pursuant to a negotiated written plea agreement, the movant agreed to plead guilty to Counts 1, 2, 3, and 7 of the indictment. In exchange, the government agreed to dismiss all remaining counts. The government agreed to recommend at sentencing that the movant receive a three-point downward adjustment from his guideline range, based on his acceptance of responsibility and his timely guilty plea. The movant also acknowledged that the court would compute an advisory sentence under the Sentencing Guidelines. The movant further agreed to waive his right to a direct appeal pursuant to 18 U.S.C. §3742, including the manner in which his sentence was imposed, unless the sentence exceeded the maximum permitted by statute or was the result of an upward departure from the guideline range established at sentencing.

he now claims that he had instructed counsel to do so.

At the January 24, 2005 hearing, the government made a proffer of the facts of the offenses, and the movant indicated that he agreed with the proffer.  The government presented the following facts:

> On or about January 26, 2001, the defendant Juan Ramon Quinones (defendant) was convicted of a crime punishable by a term of imprisonment exceeding one year.  That is a felony crime.

> On October 1, 2004, a confidential source acting under the direction of law enforcement made arrangements with the defendant for the defendant to deliver a quantity of cocaine to the source at a parking lot in West Palm Beach, Palm Beach County, Florida.

> Later that same evening surveillance units observed the defendant arrive at the parking lot driving a Dodge Durango.  The defendant, who was the only occupant of the Dodge Durango, slowly drove past the source.  The defendant then parked the Dodge Durango and stepped out.

> As members of the Palm Beach County Sheriff's Office drove towards the defendant, the defendant looked about in the direction of the police and fled, throwing bags containing cocaine to the ground.

> The defendant was apprehended by the police and properly advised of his Miranda rights.  He orally acknowledged that he understood each of his rights.  The defendant was searched incident to his arrest. The deputies discovered two more bags of cocaine on the defendant's person.

The deputies discovered a loaded firearm, namely, a Colt 45 caliber pistol underneath the bottom of the center console [of the] Dodge Durango the defendant was driving.

Colt firearms are not manufactured in the State of Florida. For the Colt firearm to have been in Florida it must have traveled in interstate and/or foreign commerce. Thus, interstate and/or foreign commerce was effected. Moreover, the recovered Colt firearm fits the definition of "firearm" under federal law.

During this time the defendant was making spontaneous statements to the police about he how thought he was going to prison forever. When the deputies asked the defendant why he thought that the defendant responded that he had more guns and grenades at his house. The defendant also told the deputies that there was more cocaine in his house.

The defendant was asked if he would sign a consent to search form and allow the police to search his house and retrieve the weapons and drugs. He replied, yes, so long as the police did not scare his dogs or his son. The police told the defendant that he could call his son and have him come outside after they arrived.

The deputies were in the process of taking the handcuffs of the defendant so that the defendant could sign the consent to search form when the defendant was accidentally tazed by one of the deputies. EMS responded to the scene and checked the defendant's vital signs. Agent Gary Chase also responded to the scene at the request of the defendant. He then signed a consent to search form for his residence.

The deputies and the defendant traveled to the defendant's residence located in Palm Beach County, Florida. The defendant was then permitted to call his son, who came out outside. During the search of the defendant's residence the police located additional firearms, cocaine and twelve improvised grenades.

An expert witness from the Bureau of Alcohol, Tobacco, Firearms, and Explosives would testify that the twelve grenades recovered in the defendant's house were destructive devices as defined under federal law. The expert witness would further testify that a search of the National Firearms Registration and Transfer Record revealed that none of the twelve grenades were registered to the defendant.

During the search of the defendant's residence Agents Gary Chase and Shawn Eastman took a taped statement from him. During the taped statement the defendant acknowledged that he had been read his Miranda rights and understood his rights. He also acknowledged that he voluntarily signed the consent to search form.

He was then asked to describe in his own words what happened that night. The defendant explained that the confidential source had called him and asked for two ounces of cocaine. The defendant said he brought the two ounces of cocaine to the source and was arrested.

The defendant said he had a number of guns in his house and that he had cocaine and grenades in his house and that he had the Colt 45 in the vehicle for protection.

The Presentence Investigation Report (PSI) assigned the movant a base offense level of 26 under U.S.S.G. §2K2.1(a)(1) (PSI ¶21). Because the offense involved more than 7 and less than 25 firearms, his offense level was increased by 4 levels, §2K2.1(b)(1)(B) (PSI ¶22). Under §2K2.1(b)(5), the offense level was increased an additional 4 levels because the movant used or possessed the gun in connection with the felony offense of possession with intent to distribute cocaine (PSI ¶23). This resulted in an adjusted offense level of 34 (PSI ¶ 27). (The government concedes that the §2K2.1(a)(1) enhancement to the base level constituted "double counting" but concludes that there was no prejudice because the movant also qualified as a career offender at the time he committed the offense in Count 2). The base offense level was also raised to a level 34 by virtue of U.S.S.G. §4B1.1(a), the guideline applicable to a career offender (PSI ¶ 28). The movant qualified as a career offender because he was at least 18 years old at the time he committed the offense in Count 2 (possession with intent to distribute cocaine in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C)), the offense in Count 2 was a felony involving a controlled substance, and the movant had at least two prior felony convictions of a crime of violence and/or controlled substance (id.). The movant was convicted of Aggravated Assault on August 17, 1998 (Dkt. No. 98-3138CFA02), (PSI ¶43) and Possession of Cocaine with Intent to Sell on February 16, 2001 (Dkt. No. 99-9545CFA02), (PSI ¶44). Since the statutory maximum penalty for the offense in Count 2 was more than 25 years, the offense level was 34, §4B1.1(b)(B). (PSI ¶ 28).

The movant was also considered an Armed Career Criminal because he was convicted in Count 1 of being a felon in possession of a firearm and he had at least three prior felony convictions of a crime of violence and/or serious drug offense (id.). In addition

to the convictions listed paragraphs 43 and 44 of the PSI, the movant was also convicted of Possession of Cocaine with Intent to Sell on February 16, 2001 (Dkt. No. 99-10413CF) (PSI ¶45).

After a three-point reduction for acceptance of responsibility, under §3E1.1, the movant's total offense level was 31. (PSI ¶ 31). An offense level of 31 and criminal history of category VI (as the movant qualified as both a career offender and armed career criminal under the guidelines, his criminal history category was VI pursuant to §§4B1.1 and 4B1.4 (PSI ¶ 49)) resulted in an advisory sentencing guideline range of 188 to 235 months of imprisonment (PSI ¶115). However, pursuant to §4B1.1(c)(3), the applicable guideline range was 262 months to 327 months (PSI ¶ 115).

The government filed no objections. The movant filed no objections to the PSI other than clarifying some information regarding some vehicles. The movant was sentenced on April 13, 2005 to 262 months' imprisonment followed by six years' supervised release.

<u>Timeliness</u>

A threshold issue in this case is whether the movant's motion was timely filed. The movant claims his §2255 motion was filed within a year from the time he first learned that no direct appeal was pending, after he contends that counsel misled him to believe that a direct appeal had been filed.

It is clear this motion was filed beyond the one-year limitations period. The movant was sentenced on April 13, 2005, and the judgment was entered by the Clerk on that date. The judgment became final for purposes of the one-year limitations

period at the latest on April 23, 2005.[2]  Thus, the movant had until April 23, 2006 to timely file this federal petition. The February 11, 2008 filing of this motion is not timely.

The movant states in his Memorandum in Support of the Motion to Vacate that "directly after sentencing the petitioner told counsel that he whished to Appeal the sentence, and counsel agreed to do so.  Over the next couple years everytime the petitioner attempted to discuss the allegedly impending Appeal, counsel would just say; 'Don't worry, I got everything under control.'" [sic]. The movant further states that he asked counsel in late September, 2007 to send him a copy of the complete record in the case, including any appeals.  He claims that counsel failed to respond, and he had his ex-wife call the court to see if an appeal had been filed, and she was told that there was no appeal.  He states that he attempted to call counsel on October 3, 2007 and his secretary told him that no appeal had been filed. The movant sent a letter to counsel on that date in which he expressed his concerns over the fact that no appeal had been filed despite being requested to do so. Counsel did not respond to the letter or phone call, and the movant confirmed with the court that no appeal had been filed but counsel had requested a copy of the plea hearing transcript.  The movant states that he obtained the transcripts on January 22, 2008 and filed this Motion shortly thereafter.  The movant argues that because he was misled by counsel, the time period for filing this Motion should be equitably tolled.

---

[2]Where, as here, a defendant does not pursue a direct appeal, the conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11 Cir. 1999). The time for filing a direct appeal expires ten days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(1). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6). On December 1, 2002, Fed.R.App.P. 26 which contains the rules on computing and extending time, was amended so that intermediate weekends and holidays are excluded from the time computation for all pleadings due in less than 11 days.

The government has submitted an Affidavit prepared by Attorney Richard W. Springer, in which he attests that the movant did not request that he file an appeal and that the movant did not instruct or request that he file an appeal until the October 3, 2007 letter.

It is clear that the failure to prosecute a direct appeal may affect the timeliness of a motion to vacate if the movant files a motion to vacate within one year of the date that he discovers through the exercise of due diligence that no appeal was filed after counsel was requested to do so. See Aron v. United States, 291 F.3d 708 (11 Cir. 2002) (reiterating that, under §2255(4), a movant may file a timely motion to vacate within one year of the date when the facts supporting his claim could have been discovered through the exercise of due diligence). Thus, the beginning of the one-year period is triggered by a date that is not necessarily related to a defendant's actual efforts or actual discovery of the relevant facts." Id. The pertinent timeliness inquiry begins with "determining whether the [defendant] exercised due diligence because . . . if he did so, the limitation period would not begin to run before the date he actually discovered the facts supporting the claim." Id. "It is only if [Defendant] did not exercise due diligence that [the Court is] required to speculate about the date on which the facts could have been discovered with the exercise of due diligence." Aron, 291 F.3d at 711, n.1.

In determining due diligence, a movant is not required to use "the maximum feasible diligence, but only 'due,' or reasonable diligence." Id. at 712. Due diligence therefore does not require a movant to undertake "repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts" to discover the facts underlying each claim. Aron, 291 F.3d at 712. The due diligence inquiry is "an individualized one that 'must take

10

into account the conditions of confinement and the reality of the prison system.'" <u>Id</u>. (citation omitted).

Moreover, the limitations period may be equitably tolled when a movant untimely files his habeas corpus petition because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence. <u>Lawrence v. Florida</u>, ___ U.S. ____, 127 S.Ct. 1079 (2007); <u>Sandvik v. United States</u>, 177 F.3d 1269, 1271 (11 Cir. 1999); <u>see also</u> <u>Akins v. United States</u>, 204 F.3d 1086 (11 Cir.), <u>cert. denied</u>, 121 S.Ct. 410 (2000). A movant is not entitled to equitable tolling unless he demonstrates both diligence in his efforts to file a timely petition and extraordinary and unavoidable circumstances. <u>Arthur v. Allen</u>, 452 F.3d 1234, 1252 (11 Cir. 2006). In order to receive the benefit of equitable tolling, the movant must establish *both* extraordinary circumstances and due diligence. <u>Diaz v. Secretary for Dept. of Corr.</u>, 362 F.3d 698, 702 (11 Cir. 2004)(emphasis added). Equitable tolling is an extraordinary remedy which is applied sparingly, and is applied only in extremely rare and exceptional circumstances. <u>Lawrence</u>, <u>supra</u> at 1085; <u>Helton v. Secretary v. Dept. of Corrections</u>, 259 F.3d 1310 (11 Cir. 2001); <u>Smith v. McGinnis</u>, 208 So.3d 13, 17 (2 Cir. 2000), <u>quoting</u> <u>Turner v. Johnson</u>, 177 F.3d 390 (5 Cir. 1999).

Attorney Richard Springer, who represented the movant through the sentencing hearing, testified that the first time the movant asked him to appeal was in a letter the movant sent him dated October 3, 2007 or in a phone call on or near that date. He stated that there was no request for an appeal prior to that date. He testified that he had innumerable phone conversations with the movant after sentencing, but all conversations were with regard to the movant's cooperation with the government and the possibility of

the government filing a Rule 35 motion.  Springer further testified
that he told the movant after he received the October 3, 2007
letter that it was too late to appeal, that he had waived his right
to an appeal and, in any event, his sentence was not unlawful.
Springer testified that the movant never asked him about a notice
of appeal, and there were no appealable issues.

Springer also testified that he did not recall any
conversations with Dana Quinones, the movant's ex-wife or Hillary
Hause, a friend of the movant's, concerning an appeal, and he would
be surprised if there were any such conversations.  He stated that
he had conversations with Dana Quinones and Hause concerning the
movant's cooperation with the government.

The movant testified that immediately after Judge Middlebrooks
announced the sentence, he told Springer to file an appeal.  The
movant further testified that Springer went to console his family
after the sentence was announced and did not return.  The movant
also testified that he attempted to contact Springer within two or
three weeks regarding an appeal, and he discussed his concerns
about an appeal with his family.  The movant stated that he
believed Springer was prosecuting an appeal, and that he believed
he was pursuing an appeal and cooperating with the government at
the same time.  The movant testified that he first learned that no
appeal was pending through his family in September or October, 2007
after his family called the clerk of court and was told no appeal
had been filed.

The Court also heard testimony from Dana Quinones and Hillary
Hause.  Dana Quinones testified that after sentencing she spoke
with Springer in the courtroom and he said he was going to file an

12

appeal.  She also testified that she spoke with the movant about the appeal after he was incarcerated and they both assumed there was an appeal pending.  Hillary Hause testified that she spoke to Springer several times about an appeal, and that Springer told her he had filed an appeal and that everything was taken care of.

The only written evidence of an expressed desire on the part of the movant to appeal is contained in the October 3, 2007 letter. (Exh. 5C).  In the letter, the movant wrote "my father and wife have both been trying to contact you in regards to my appeal, but have been unsuccessful." He also wrote: "I was calling you to find out what the hold up is with the documents I have been requesting, and to personally ask you if you ever even filed the requested appeal with the Eleventh Circuit. . . I thought that no matter what else you were doing to help me, that there was a direct appeal pending on the sentence."  The movant also acknowledges that he missed the ten day deadline to file a notice of appeal and the one year deadline to file a §2255 motion.

After consideration of the testimony of the movant, trial counsel, and the two witnesses, and upon close observation of the demeanor of all who testified, the Undersigned finds the movant had a genuine belief that he had communicated his desire to appeal to trial counsel and a genuine belief that an appeal was pending was from the date of sentencing until his family discovered, in September, 2007, that no appeal had been filed.  This finding is based on the consistent testimony of the movant, Dana Quinones and Hillary Hause, who all testified that they communicated a desire to appeal to Springer immediately following the sentencing hearing, and the contents of the October 3, 2007 in which the movant states that he believed an appeal had been filed.  It appears that Attorney Springer may not have accurately perceived the movant's

desire to appeal, as the testimony revealed that Springer immediately went to console his family after the sentence was announced and did not return to discuss the sentence with the movant, who was removed from the courtroom before Springer could return. It is understandable that in the process of attempting to console family members after a lengthy sentence was announced Springer may not have been cognizant of the request to appeal, especially after he had explained to the movant that the plea agreement contained a waiver of the right to appeal and the movant stated that he understood this waiver both in discussions with Springer and before Judge Middlebrooks.  In addition, there is no evidence of any direct communication between Springer and the movant regarding an appeal until October, 2007.  Nevertheless, the Undersigned finds credible the movant's testimony that he believed that he had requested that Springer file an appeal, and credits the movant's explanation that he did not discuss the appeal with Springer because he believed it was pending and because he believed that he was concentrating on cooperating with the government as part of an alternative strategy to have his sentence reduced.

Accordingly, the Undersigned finds that the movant has established due diligence to excuse the untimely filing of this motion.  The statute of limitation was effectively tolled until October, 2007, and the movant filed this Motion in February, 2008, within one year.

<u>Failure to File Direct Appeal</u>

14

In claim one, Quinones asserts that his lawyer failed to file a requested direct appeal.  The claim was not conclusively refuted by the record, and warranted further evidentiary findings.

It is clear that a counsel's failure to file a direct appeal after being <u>requested</u> to do so by his client results in a <u>per</u> <u>se</u> constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable").

There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." <u>Roe v. Flores-Ortega</u>, <u>supra</u> at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken--i.e., the defendant expressed to his attorney a desire to appeal. <u>Id</u>.; <u>see also</u>, <u>McElroy v. United States</u>, 2007 WL 4393955, *1 (11 Cir. 2007); <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 792 (11 Cir. 2005).

Even if the defendant contractually waived the right to appeal, counsel may be ineffective for not filing a notice of appeal when directed to by the defendant because the merits of an appeal are not to be considered when determining whether an out-of-time appeal should be permitted. <u>Gaston v. United States</u>, 237 Fed.Appx. 495, 497 (11 Cir. 2007). Likewise, the defendant need not

show that there were viable grounds for such an appeal. <u>Martin v.</u> <u>United States</u>, 81 F.3d 1083 (11 Cir. 1996); <u>Montemoino v. United</u> <u>States</u>, 68 F.3d 416, 417 (11 Cir. 1995); <u>Restrepo v. Kelly</u>, 178 F.3d 634, 641-42 (2d Cir. 1999)(holding that a habeas petitioner alleging ineffective assistance of counsel based on counsel's failure to file a requested notice of appeal need not demonstrate that his defaulted appeal would have succeeded in order to establish prejudice sufficient for habeas relief). Prejudice is presumed when counsel fails to file a notice of appeal when requested to do so by a client. <u>Gaston v. United States</u>, 237 Fed.Appx. at 496, <u>citing</u>, <u>Flores-Ortega</u>, 528 U.S. at 483.

In the case of an appeal following a guilty plea, however, the defendant is entitled to an out-of-time appeal of sentencing issues only. <u>Id</u>. Only sentencing claims may be raised on an out-of-time appeal following a plea because "the few grounds upon which the guilty plea may be challenged are not limited to direct appellate review, but instead are more appropriately raised in §2255 proceedings." <u>Montemoino</u> at 417.

Although there was a limited appeal waiver in this case, the Eleventh Circuit has clarified that counsel must still file a notice of appeal if directed to do so by his client, unless the movant has waived <u>all</u> of his appellate rights. <u>See</u>, <u>Gomez-Diaz v.</u> <u>United States</u>, 433 F.3d 788 (11 Cir 2005). Specifically, the Eleventh Circuit held that the general rule that an attorney who disregards instructions from his client to appeal acts in a manner that is *per se* professionally unreasonable applies with equal force where a defendant has waived some, but not all, of his appeal rights. <u>Id</u>. at 794.

As discussed above, the Undersigned has concluded that the

movant has sufficiently demonstrated that he requested that Attorney Springer file a notice of appeal in his case.  Although counsel may have believed that Quinones waived his appellate rights based on the terms of the limited appeal waiver as contained in the negotiated plea agreement, the law is clear that Quinones did not do so, and the Undersigned credits the movant's testimony that he always desired to pursue an appeal in order to challenge the lawfulness of his sentence.[3]

In conclusion, the Undersigned finds that the movant Quinones requested a direct appeal, but that counsel failed to do so.  It is therefore recommended that this Motion to Vacate be granted, the same sentence reimposed[4], and that the movant Quinones be permitted to file a direct appeal, as dictated by the procedure set forth in <u>United States v. Phillips</u>, 225 F.3d 1198, 1200-01 (11 Cir. 2000). The law is clear that where counsel "acts contrary to his client's

_____

[3] It appears that there may be an appealable issue with regard to whether the two state convictions entered on the same day were properly counted as individual convictions for the purpose of sentencing the movant as an armed career criminal, which resulted in a higher mandatory minimum sentence. (<u>See</u> PSI ¶28).  The record shows that the movant raised this issue with trial counsel after he read the PSI, and counsel told him that both convictions were properly counted.  This may not be the case.  The movant argues that the state court consolidated the two convictions and thus they should only have been counted as one conviction, and thus he would not have the three requisite convictions to qualify as an armed career offender.  In response to this claim, the government discusses each conviction and apparently argues that the two state convictions were separate and distinct, but bases its argument that the claim has no merit (the claim was couched as an ineffective assistance of trial counsel claim for failing to challenge sentence) on the fact that the movant failed to establish herein that the state court entered a formal order consolidating the two felony drug convictions.  This suggests that if the movant had the opportunity on direct appeal (or upon resentencing) to produce such a formal order, that he may be successful in challenging the armed career criminal designation.  The Court need not address at this time whether this would have any impact on the applicable guideline range or otherwise impact his sentence, considering that he is also designated as a career offender (a designation the movant also challenges) or whether trial counsel's failure to preserve a challenge to the sentence constitutes ineffective assistance.

[4] In the alternative, the Court may choose to appoint counsel to explore the sentencing issue before resentencing the movant.

17

wishes or fails to fulfill his duty to attempt to determine his client's wishes," prejudice is presumed, and the defendant "is entitled to an out-of-time appeal, regardless of whether he can identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver." See Gomez-Diaz v. United States, 433 F.3d at 793; see also, Montemoino v. United States, 68 F.3d 416, 417 (11 Cir. 1995); Roe v. Flores-Ortega, 528 U.S. at 483.

The remaining claims, however, should be dismissed without prejudice to the filing of a §2255 motion once the movant's conviction becomes final after resolution of his direct appeal. See McIver v. United States, 307 F.3d 1327, 1332, n. 2 (11 Cir. 2002).[5] This is true because an order granting a §2255 petition, and reimposing the same sentence, "resets to zero the counter of

---

[5]In McIver, the Eleventh Circuit reasoned that dismissal was appropriate because:

> [T]here are significant inefficiencies to any other approach. If the district court were to deny a collateral claim under a different standard of review than applies on direct appeal, then the defendant might be entitled to relitigate the same claim in his reinstated direct appeal. Moreover, both the government and the petitioner could pursue collateral appellate proceedings on other claims that the outcome of the direct appeal might render unnecessary. Although in Clisby v. Jones, 960 F.2d 925, 936 (11 Cir. 1992), we instructed district courts to resolve all claims in petitions brought pursuant to 28 U.S.C. § 2254, equally clear precedent of this Court directs that collateral claims should not be entertained while a direct appeal is pending. See Welsh v. United States, 404 F.2d 333 (5th Cir. 1968) (binding authority in the Eleventh Circuit under Bonner v. Prichard, 661 F.2d 1206, 1209 (11 Cir. 1981) (en banc)); see also Rules Governing 2255 Proceedings, Rule 5, advisory committee note; United States v. Cook, 997 F.2d 1312, 1319 (10 Cir. 1993); United States v. Gordon, 634 F.2d 638, 638-39 (1 Cir. 1980); United States v. Davis, 604 F.2d 474, 484 (7 Cir. 1979); Jack v. United States, 435 F.2d 317, 318 (9 Cir. 1970); Womack v. United States, 395 F.2d 630, 631 (D.C. Cir. 1968); Masters v. Eide, 353 F.2d 517 (8 Cir. 1965). Once the court has determined that the petitioner is entitled to a direct appeal, such an appeal is "pending" for all relevant policy purposes. Id.

collateral attacks pursued," and therefore "does not render subsequent collateral proceedings second or successive." McIver v. U.S., 307 F.3d 1327, 1332 (11 Cir. 2002)(citations omitted).

It is therefore recommended that: (1) this Motion to Vacate be granted solely as to the claim that counsel was ineffective for failing to prosecute a requested direct appeal; (2) that the same sentence be reimposed or, in the alternative, the Court appoint counsel for the purpose of exploring the sentencing issue discussed herein, (3) that the movant be permitted to file a direct appeal, as dictated by the procedure set forth in United States v. Phillips, 225 F.3d 1198, 1200-01 (11 Cir. 2000); and (4) that the remaining claims raised herein be dismissed without prejudice to the movant to raise them in a subsequent §2255 motion once his conviction becomes final upon resolution of his reinstated direct appeal.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 24th date of August, 2009.

_____
UNITED STATES DISTRICT JUDGE

cc:  Michael B. Cohen, Esq.
     Attorney for Movant
     600 N. Andrews Avenue
     Suite 460
     Fort Lauderdale, FL 33309

     William T. Zloch, AUSA
     U.S. Attorney's Office
     500 South Australian Avenue
     Suite 400
     West Palm Beach, FL 33401